IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cr2

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>Vs. )<br>)<br>FRANCISCO SANCHEZ MONTERO, )<br>)<br>Defendant. )<br>_____ ) | MEMORANDUM AND<br>RECOMMENDATION |

THIS MATTER is before the court upon defendant's Motion to Suppress. Having carefully considered defendant's Motion to Suppress and reviewed the pleadings, the court enters the following findings, conclusions, and Recommendation.

## FINDINGS AND CONCLUSIONS

**I.   Procedural Background**

Defendant has moved to suppress evidence seized by the Cleveland County Sheriff's Department during a roadside search of his vehicle on January 25, 2005. An evidentiary hearing was conducted on March 21, 2005. At that hearing, the United States called two Cleveland County deputies who were involved in the search. In addition, the government placed into evidence a DVD containing a sound and picture recording of the actual stop of defendant's vehicle and the incident search. At the conclusion of the hearing, defendant was granted leave to file a memorandum of law and supplement his motion with his affidavit,

1

which was not filed with the original motion. In response, the United States has filed a timely memorandum of law. From the outset, the undersigned notes that many of defendant's averments in his affidavit are wholly contradicted by the video and audio evidence.

## II. Standard Applicable to Motions to Suppress

Motions to suppress are mixed questions of law and fact that are disposed of by the court without the assistance of the jury. United States v. Stevenson, 396 F.3d 538 (4th Cir. 2005); Fed.R.Crim.P. 12(b)(3)(C), 12(d); Fed.R.Evid. 104(a). When a defendant moves to suppress evidence seized based on an investigatory stop, the United States Supreme Court has held that the

> Fourth Amendment protects citizens from 'unreasonable searches and seizures' by the government, and its protections extend to brief investigatory stops ... that fall short of traditional arrest."

United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). In those situations, the court looks to whether the actions of law enforcement are supported by a reasonable articulable suspicion that criminal activity "'may be afoot." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting Terry, supra, at 30). To determine whether an investigatory stop meets the requirements of the Fourth Amendment, a court must "look at the 'totality of the circumstances'" to see whether the detaining officer had a " 'particularized and objective basis' for suspecting legal wrongdoing." Arvizu, supra, at 273. The court's inquiry is objective rather than subjective, in that the Fourth Amendment inquiry

"turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," not what an officer thought or anticipated at the time. Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (citation and quotations omitted). In this case, the court heard the testimony of Sergeant Rodney Fitch and Corporal Fitch, Cleveland County Sheriff's Department, and finds such unimpeached testimony to be credible and consistent with the video and audio evidence. The defendant did not testify.

## III. Discussion

### A. The Stop, Consent, and Search

On the afternoon of January 25, 2005, Sergeant Fitch was in his patrol car in the median of Interstate 85, headed South. He testified that he observed defendant traveling in the left or "fast lane" of travel going below the posted speed limit, hands firmly gripping the steering wheel, and avoiding eye contact with the officer. Based on such observations, Sergeant Fitch pulled from the median to catch up with the vehicle. Defendant then moved his car from the left lane to right lane of travel, and Sergeant Fitch observed the passenger-side tires of defendant's van cross the white or fog line twice. Based on his observations, Sergeant Fitch testified that he suspected defendant was impaired, activated his blue lights, and pulled defendant over to the breakdown lane between mileposts one and two of Interstate 85 South in North Carolina at approximately 3:17 p.m.

After pulling defendant over, Sergeant Fitch approached the passenger side of the defendant's van and asked for his driver's license, which defendant produced. Noticing that

such license was issued by the State of Tennessee, he questioned defendant about why he was driving a vehicle tagged and registered in Georgia to a person other than himself. Sergeant Fitch questioned defendant as to the name of the true owner of the van, asked him where he was coming from, and how he had traveled to Atlanta to get the van. The defendant's responses to those questions were confusing and inconsistent. He did not know the name of the owner of the vehicle he was operating. The defendant gave several explanations to try to explain how he had traveled to Atlanta to obtain possession of the vehicle.

At 3:19 p.m., Sergeant Fitch then returned to his patrol car with defendant's license to write a warning ticket and await the results of any NCIC checks to see if the van had been stolen or if any warrants were outstanding for the driver. The video shows that at all times defendant remained in the van.

At 3:24 p.m., the defendant got out of his van and walked to the area between the van and the patrol car.

At 3:24:50 p.m., Sergeant Fitch returned the license and registration, and handed them to the defendant along with a warning ticket. After Sergeant Fitch had explained the warning ticket to him, Sgt. Fitch asked the defendant to be more careful in the future and wished him a good day. Sergeant Fitch testfied that he planned to let defendant go, but that he also planned to ask for consent to search immediately thereafter. Sergeant Fitch further testified that even if consent was not given, he planned on conducting a walk around of the vehicle with a drug sniffing K-9. After being told to have a nice day, the defendant turned and

started walking back to the van.

At 3:25p.m., Sergeant Fitch initiated what appears to be the standard "consent colloquy," by asking the defendant whether he could ask him another question. Sergeant Fitch then asked whether defendant had any guns, large quantities of money, or drugs in his vehicle. The video evidence and testimony reveals that the defendant indicated his consent to search of the van by

(1) shrugging his shoulders (which the defendant's own affidavit states was intended to convey "yes" to the officer);

(2) upon being asked a second time by the officer for a answer, the defendant then verbally said yes which is audible on the video; and

(3) the officer asked a third time, due to the passing traffic, and the defendant again verbally consented to ta search.

Throughout the search of the vehicle defendant remained near the front of the patrol vehicle and at no time approached the officers to withdraw consent.

Review of the testimony of Sergeant Fitch and Corporal Fitch reveals that at no time prior to arrest did the officers draw or otherwise brandish a firearm. Further, the backup officers stayed in their cars until they heard, over Sgt. Fitch's broadcast microphone, the defendant's verbal consent to the search.

As the backup officers walked past the defendant toward the van, the video shows without audio (the only microphone was on Sergeant Fitch) that there was a brief post-

consent conversation between one of those officers and the defendant. Corporal Fitch testified that this conversation was the other backup officer asking the defendant for consent for those officers also to search the van, and that Corporal Fitch heard the defendant give his consent to those officers as well. In all, the court counted from the video and testimony that defendant consented four times to the search, that the encounter with defendant prior to receiving consent was brief, and that at all times the officers acted in a courteous and professional manner toward the defendant.

## B. The Stop Complied with Terry v. Ohio

The teachings of the Supreme Court in Terry v. Ohio, 392 U.S. 1 (1968), and its progeny govern this court's inquiry. Under Terry, if an officer has a reasonable articulable suspicion that criminal activity is afoot - - that is, that a person has just committed or is about to commit a crime - - he may seize such person and, if he reasonably fears the person is armed and dangerous, may conduct a frisk for weapons. Id. A reasonable suspicion will, as in this case, also support a stop for the limited purpose of questioning. Florida v. Royer, 460 U.S. 491, 498 (1983).

Whenever an investigative stop is based on less than probable cause, it "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Id., at 500. An ordinary traffic stop is classified as a "limited detention" and is governed by Terry standards. United States v. Rusher, 966 F.2d 868 (4th Cir.), cert. denied, 61 U.S.L.W. 3285 (U.S. 1992). An officer can do no more than ask for a driver's license and vehicle registration, run a computer

check, and issue a citation during an *ordinary* traffic stop. Id.

An "articulable and reasonable suspicion" requires some minimal level of objective justification for the stop, which must be more than an unparticularized "hunch," but less than the level of suspicion required for probable cause. United States v. Sokolow, 490 U.S. 1 (1989); United States v. Hensley, 469 U.S. 221 (1985); United States v. Hines, 943 F.2d 348 (4th Cir.), cert. denied, 60 U.S.L.W. 3405 (U.S. 1991). A "totality of the circumstances" test is used to determine the existence of a reasonable suspicion of criminal conduct. United States v. Sokolow, supra. Factors to be considered in measuring the reasonableness of a stop include:

a. the area's disposition toward criminal activity;

b. the time of the stop; and

c. any suspicious conduct assessed in light of the officer's experience.

Id. Reviewing Sergeant Fitch's testimony in light of such factors, it appears that the stop of defendant's vehicle was based on an articulable and reasonable suspicion that he was driving while impaired. In this case, the first two factors appear to have no application, while the third factor comes into play. Sergeant Fitch testified on cross examination that the defendant was driving below the speed limit in the fast lane, gripping the steering wheel tightly, avoided eye contact with an officer, and swerved over the fog line, which he testified are all common indicators of drunk driving based on his training and experience. See generally United States v. Bull, 565 F.2d 869 (4th Cir. 1977) (when there are other factors present arousing the

suspicions of a police officer, the fact that defendants turned away from approaching police officers gave such officers reasonable suspicion to stop the suspect).

Having considered all of the evidence presented, Sergeant Fitch had an articulable and reasonable suspicion when he activated his blue lights and stopped defendant's vehicle, satisfying the requirements of Terry and its progeny.

Objective facts and circumstantial evidence suggesting that a particular vehicle or its occupants are involved in criminal activity provide a sufficient basis to justify an investigatory stop of a vehicle. United States v. Cortez, 449 U.S. 411 (1981); Delaware v. Prouse, 440 U.S. 648 (1979); United States v. Taylor, 857 F.2d 210 (4th Cir. 1988). An investigative stop, to be reasonable, must also be limited in duration. United States v. Sharpe, 470 U.S. 675 (1985). There are no artificial time limits for a Terry stop; however, it must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Florida v. Royer, supra. Finding that the officer complied with Terry in stopping the vehicle, and that such stop was very limited in duration to the point of being expeditious and lasted no longer than was necessary to effectuate the purpose of the stiop, the undersigned is compelled to recommend that defendant's Motion to Suppress based on an allegedly unlawful stop be denied.

C.     **Consent to Search**

The burden of proof on the issue of consent is the government's. Bumper v. North Carolina, 391 U.S. 543 (1968). The government must show that defendant's consent was voluntary and uncoerced, but consent can be voluntary even where there is tremendous

pressure.

First, defendant takes issue with Sergeant Fitch making any inquiry after the time it was determined he was not impaired and before consent was given to search. Defendant argues that even if the stop was lawful, once the officer discovered that he was not impaired the officer was required to inquire no further. While it is clear that Sergeant Fitch no longer suspected impaired driving, information he had gathered roadside raised a reasonable suspicion that the van was stolen or that defendant was engaged in unlawful conduct, including transportation of controlled substances. Sergeant Fitch testified that his suspicions were aroused by defendant's state of residence being different from the state in which the van was registered, by the fact that the defendant was not the owner and he was unable to name the true owner, by his claim that he had driven up to Norfolk just the day before and was now heading to Atlanta, and by his different versions of how he got to Atlanta to pick up the van.

In <u>United States v. Lattimore</u>, 87 F.3d 647 (4th Cir. 1996)(*en banc*), the appellate court was presented with a nearly identical fact pattern. Lattimore was stopped by a South Carolina trooper for speeding. The trooper wrote him a warning ticket, then returned the defendant's license and registration to him, as well as handing him the ticket. Only then did the trooper raise the issue of possible contraband and ask the defendant if he would consent to a search of his vehicle. Lattimore gave oral consent, although he refused to give a written consent. As does the defendant in this case, Lattimore claimed that the police had exceeded the scope of the initial traffic stop by questioning him about drugs. The appellate court held,

as follows:

> The totality of the circumstances presented indicate that from this point forward the encounter was consensual; Lattimore was not being detained. Thus, there was no illegality to taint Lattimore's oral consent to the search.

Id., at 653.

Likewise, in United States v. Foreman, 369 F.3d 776 (4th Cir. 2004), the defendant was stopped by a Virginia trooper. The trooper testified that he noticed Foreman was driving in a tense posture, holding the wheel with both hands, and looking straight ahead. (This is nearly identical to defendant's circumstances, discussed *supra* in the context of a Terry stop.) fter noticing such behavior, the trooper began to follow Foreman. He observed two infractions, speeding and an obstructed windshield view due to air fresheners hanging from the mirror. The trooper pulled Foreman over, then did a license check. He gave the defendant a verbal warning, returned his license and registration, and wished him a good day. Only then, as here, did he raise the issue of contraband and seek consent to a search.

In both the majority and dissenting opinions in Foreman, the Court of Appeals for the Fourth Circuit concur that up to this point the trooper's actions were lawful. Foreman then refused to consent, and the appellate court held that the officer constitutionally extended the detention of the defendant long enough to have drug-sniffing dog walk around the exterior of the vehicle, and once the dog allerted, the officer had probable cause to search the vehicle. Under the facts here, the defendant did consent on several occasions as the unrebutted video and audio evidence clearly showed.

An officer's returning of a driver's license and registration or ticket has never been held to be a point after which the officer can ask no more questions. Instead, it is the returning of documents and issuance of tickets or warnings that is a key indicator that a "person is free to go," which is important in determining whether there was a Fourth Amendment "seizure" that could taint the consent. United States v. Weaver, 282 F.3d 302, 310-11 (4th Cir. 2002). As in those cases, so too here a reasonable person in the defendant's position would have no longer felt that he was in custody, and could have declined to consent.

Defendant's subjective impression that he did not believe he could refuse to consent is just as irrelevant to the Fourth Amendment inquiry as the officer's subjective intent to conduct a K-9 walkabout of the vehicle for drugs if defendant refused to consent. The Fourth Amendment inquiry "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," not what an officer thought or anticipated doing at the time. Maryland v. Macon, 472 U.S. 463, 470-71 (1985) (citation and quotations omitted). Likewise, the inquiry on consent is whether a reasonable person in defendant's position felt that he was not in custody and could decline consent. Clearly, the case law in Lattimore and Foreman establishes that the exact procedures employed by Sergeant Fitch in this case are constitutional. In other words, Sergeant Fitch's actions in securing defendant's consent to search were "textbook."

The undersigned has taken into account all the circumstances surrounding the

defendant's encounter with law enforcement officers in this case, as presented at the hearing, and based thereon has determined that the conduct of the law enforcement officer was sufficient to communicate to a reasonable person that he was free to decline the officer's requests or otherwise terminate the encounter. Waiver does not necessarily have to be knowing and intelligent, Schneckloth v. Bustamonte, 412 U.S. 218 (1973), because the "Constitution does not require 'proof of knowledge of a right to refuse as the *sine qua non* of an effective consent to a search.'" United States v. Mendenhall, 446 U.S. 544, 558 (1980). Further, the subjective belief of defendant that he will be otherwise be detained does not invalidate the consent where no force or threats are actually present. United States v. Analla, 975 F.2d 119 (4th Cir. 1992), cert. denied, 61 U.S.L.W. 3714 (U.S. 1993). Based on the foregoing, the undersigned determines that the government has satisfied its burden of proving that the consent was voluntary and uncoerced, and must, therefore, recommend to the district court that defendant's Motion to Suppress be denied.

### D. Racial Profiling

In the defendant's motion, he stated "defendant asserts that the officers were racially profiling the drivers going past them and followed and stopped defendant because he is Hispanic." The only evidence presented on this issue was a question to Sergeant Fitch as to whether he noticed the race of the operator of the vehicle as it traveled by him. Sergeant Fitch testified that he only noticed that the operator was not Caucasian. No other evidence was presented and no argument has been made by the defendant concerning this issue. From

the little evidence that has been shown, the defendant has no foundation for any argument regarding issues related to selective enforcement of the law based on considerations of race. See Whren v. United States, 517 U.S. 806 (1996); United States v. Armstrong, 517 U.S. 456 (1996); Harris v. City of Virginia Beach, Virginia, 11 Fed.Appx. 212, 2001 WL 538905 (4th Cir. 2001) (unpublished, copy placed in file).

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that defendant's Motion to Suppress be **DENIED.**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

This _____ day of __April__, 2005.

_____
DENNIS L. HOWELL
UNITED STATES MAGISTRATE JUDGE

jhg

United States District Court
for the
Western District of North Carolina
April 6, 2005

* * MAILING CERTIFICATE OF CLERK * *

Re: 1:05-cr-00002

True and correct copies of the attached were mailed by the clerk to the following:

    Richard Lee Edwards, Esq.
    United States Attorney
    Room 233, U.S. Courthouse
    100 Otis Street
    Asheville, NC 28801

    Kyle King, Esq.
    15 Lawyers Walk
    Asheville, NC 28801

cc:
Judge (✓)
Magistrate Judge (✓)
U.S. Marshal (✓)
Probation (✓)
U.S. Attorney ( )
Atty. for Deft. ( )
Defendant ( )
Warden ( )
Bureau of Prisons ( )
Court Reporter ( )
Courtroom Deputy ( )
Orig-Security ( )
Bankruptcy Clerk's Ofc. ( )
Other_____ ( )

Date: April 6, 2005

Frank G. Johns, Clerk

By: _____
    Deputy Clerk